No. 20-3720

# IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

vs.

BRANDON JAMES SEYS,

Defendant-Appellant.

*Appeal from the United States District Court*
*For the Northern District of Iowa*
*Honorable C.J. Williams, Judge*

## BRIEF OF APPELLEE

EMILY K. NYDLE
Assistant United States Attorney
Northern District of Iowa
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa 52401
(319) 363-6333
(319) 363-1990 (fax)
Emily.Nydle@usdoj.gov

# SUMMARY OF THE CASE

Defendant Brandon James Seys appeals the district court's denial of his motion to withdraw his guilty plea to firearms and drug trafficking offense. He also appeals his 324-month sentence arguing that he should have received a reduction for acceptance of responsibility and that his sentence was substantively unreasonable.

If oral argument is granted, the government requests ten minutes.

Appellate Case: 20-3720    Page: 2    Date Filed: 06/15/2021 Entry ID: 5045668

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE .........................................................................i

TABLE OF CONTENTS ..........................................................................ii

TABLE OF AUTHORITIES .....................................................................v

JURISDICTIONAL STATEMENT ............................................................1

STATEMENT OF THE ISSUES................................................................2

STATEMENT OF THE CASE .................................................................3

    Relevant Procedural History..............................................................3

    Rulings Presented for Review ..........................................................11

    Statement of the Facts ....................................................................11

    A.    Defendant's Offense Conduct.................................................11

    B.    Testimony Regarding Recordings at Hearings Prior to Plea Hearing..........................................................................16

    C.    Evidence from Motion to Withdraw Guilty Plea and Hearing.....................................................................................19

SUMMARY OF THE ARGUMENT .........................................................25

ARGUMENT ......................................................................................26

I.    The District Court Did Not Abuse Its Discretion in Denying Defendant's Motion to Withdraw His Guilty Plea ........................26

    A.    Standard of Review................................................................26

Appellate Case: 20-3720    Page: 3    Date Filed: 06/15/2021 Entry ID: 5045668

B. The Court Correctly Denied Defendant's Motion to Withdraw His Guilty Plea ..................................... 26

    1. Defendant failed to establish a fair and just reason to withdraw his plea ......................... 27

    2. Defendant has failed to support his claim of legal innocence ........................................... 33

    3. The timing of defendant's motion weighs against allowing defendant to withdraw his plea ................... 35

    4. The government would have been prejudiced by the withdrawal of defendant's plea ............................. 36

II. The District Court Did Not Clearly Err in Sentencing Defendant When It Denied Him a Reduction for Acceptance of Responsibility ................................................................. 37

A. Standard of Review ................................................. 37

B. The District Court Properly Denied Defendant a Reduction for Acceptance of Responsibility ......................... 37

III. The District Court Did Not Abuse Its Discretion in Imposing a Substantively Reasonable Sentence at the Bottom of the Guidelines Range ....................................................... 40

A. Standard of Review ................................................. 40

B. The District Court Did Not Err in Imposing a Substantively Reasonable Sentence ..................................... 42

CONCLUSION ............................................................ 44

CERTIFICATE OF FILING AND SERVICE ......................................... 45

iii

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE
REQUIREMENTS.....................................................................46

iv

# TABLE OF AUTHORITIES

**Federal Cases**      **Page**

*Arizona v. Youngblood*, 488 U.S. 51 (1988) ...................................... 28, 30

*Brady v. Maryland*, 373 U.S 83 (1963). .................................................. 30

*California v. Trombetta*, 467 U.S. 479 (1984)................................... 29, 31

*Gall v. United States*, 552 U.S. 38 (2007) ............................................... 44

*Strickler v. Greene*, 527 U.S. 263 (1999) ................................................ 28

*United States v. Abdullah*, 947 F.2d 306 (8th Cir. 1991) ...................... 33

*United States v. Anderson*, 618 F.3d 873 (8th Cir. 2010) ...................... 42

*United States v. Boone*, 869 F.2d 1089 (8th Cir. 1989).......................... 35

*United States v. Bugh*, 701 F.3d 888 (8th Cir. 2012)............................. 30

*United States v. Cruz*, 643 F.3d 639 (8th Cir. 2011).................... 2, 26, 27

*United States v. Deegan*, 605 F.3d 625 (8th Cir. 2010) .......................... 41

*United States v. Durham*, 178 F.3d 796 (6th Cir. 1999)......................... 36

*United States v. Farmer*, 312 F.3d 933 (8th Cir. 2002) ......................... 28

*United States v. Farmer*, 647 F.3d 1175 (8th Cir. 2011) ....................... 41

*United States v. Feemster*, 572 F.3d 455 (8th Cir. 2009)............. 2, 41, 44

*United States v. Funke*, 846 F.3d 998 (8th Cir. 2017) ............................ 41

*United States v. Goodale*, 738 F.3d 917 (8th Cir. 2013) ......................... 41

*United States v. Goodson*, 569 F.3d 379 (8th Cir. 2009) ........................ 34

*United States v. Green*, 521 F.3d 929 (8th Cir. 2008)............................ 35

*United States v. Hayes*, 518 F.3d 989 (8th Cir. 2008)............................ 40

Appellate Case: 20-3720   Page: 6   Date Filed: 06/15/2021 Entry ID: 5045668

*United States v. Horton*, 756 F.3d 569 (8th Cir. 2014) ...........................28

*United States v. Jones*, 612 F.3d 1040 (8th Cir. 2010) ...........................40

*United States v. LeBeau*, 867 F.3d 960 (8th Cir. 2017) ...................28, 29

*United States v. Ludwig*, 972 F.2d 948 (8th Cir. 1992) ...........................34

*United States v. Mahone*, 688 F.3d 907 (8th Cir. 2012) .....................2, 38

*United States v. McHenry*, 849 F.3d 699 (8th Cir. 2017) ..................2, 27

*United States v. Morales*, 923 F.2d 621 (8th Cir. 1991) ........................37

*United States v. Morrison*, 967 F.2d 264 (8th Cir. 1992) ...........26, 27, 34

*United States v. Mugan*, 441 F.3d 622 (8th Cir. 2006) ...........................28

*United States v. Newson*, 46 F.3d 730 (8th Cir. 1995).................2, 26, 38

*United States v. Nichols*, 986 F.2d 1199 (8th Cir. 1993) ...........32, 33, 34

*United States v. Norvell*, 729 F.3d 788 (8th Cir. 2013) ...........................26

*United States v. Paris*, 954 F.3d 1069 (8th Cir. 2020).................2, 28, 29

*United States v. Peck*, 496 F.3d 885 (8th Cir. 2007) ...............................41

*United States v. Peebles*, 80 F.3d 278 (8th Cir. 1996)...........................34

*United States v. Ramirez-Hernandez*, 449 F.3d 824 (8th Cir. 2006)......34

*United States v. Rice*, 184 F.3d 740 (8th Cir. 1999) ...............................37

*United States v. Rollins*, 552 F.3d 739 (8th Cir. 2009)...........................28

*United States v. Scales*, 735 F.3d 1048 (8th Cir. 2013) ..........................41

*United States v. Stults*, 575 F.3d 834 (8th Cir. 2009)..............................44

*United States v. Thigpen*, 848 F.3d 841 (8th Cir. 2017) ....................2, 40

*United States v. Thompson*, 906 F.2d 1292 (8th Cir. 1990) ..................27

Appellate Case: 20-3720     Page: 7     Date Filed: 06/15/2021 Entry ID: 5045668

*United States v. Townsend*, 617 F.3d 991 (8th Cir. 2010)......................42

*United States v. Walker*, 688 F.3d 416 (8th Cir. 2012)...........................37

*United States v. Webster*, 625 F.3d 439 (8th Cir. 2010).........................29

*United States v. Wilcox*, 666 F.3d 1154 (8th Cir. 2012).........................42

*United States v. Williams*, 577 F.3d 878 (8th Cir. 2009).................28, 29

*United States v. Wisecarver*, 644 F.3d 764 (8th Cir. 2011)..............42, 43

*United States v. Wojcik*, 60 F.3d 431 (8th Cir. 1995)............................33

## Federal Statutes

18 U.S.C. § 3231 ..................................................................................1

18 U.S.C. § 3553(a) ............................................................................43

28 U.S.C. § 1291 ..................................................................................1

## Federal Rules

USSG §2D1.1(c) ....................................................................................7

USSG §3E1.1 .................................................................................2, 37

Appellate Case: 20-3720     Page: 8     Date Filed: 06/15/2021 Entry ID: 5045668

# JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. On December 23, 2020, the court entered final judgment, and on December 28, 2020, defendant filed a timely notice of appeal. This Court has jurisdiction over this criminal appeal pursuant to 28 U.S.C. § 1291.

Appellate Case: 20-3720    Page: 9    Date Filed: 06/15/2021 Entry ID: 5045668

# STATEMENT OF THE ISSUES

**I.    *Whether the District Court Abused Its Discretion in Denying Defendant's Motion to Withdraw His Guilty Plea?***

*United States v. Newson*, 46 F.3d 730 (8th Cir. 1995)
*United States v. McHenry*, 849 F.3d 699 (8th Cir. 2017)
*United States v. Cruz*, 643 F.3d 639 (8th Cir. 2011)
*United States v. Paris*, 954 F.3d 1069 (8th Cir. 2020)

**II.   *Whether the District Court Clearly Erred in Sentencing Defendant When It Denied Him a Reduction for Acceptance of Responsibility?***

*United States v. Mahone*, 688 F.3d 907 (8th Cir. 2012)
USSG §3E1.1

**III.  *Whether the District Court Abused Its Discretion in Imposing a Substantively Reasonable Sentence at the Bottom of the Guidelines Range?***

*United States v. Feemster*, 572 F.3d 455 (8th Cir. 2009)
*United States v. Thigpen*, 848 F.3d 841 (8th Cir. 2017)

2

## STATEMENT OF THE CASE

## Relevant Procedural History

On January 24, 2019, a grand jury charged defendant with Count 1, conspiracy to distribute methamphetamine; Count 2, possession of firearms during and in relation to a drug trafficking crime; Count 3, possession of firearms by a felon; Count 4, possession with intent to distribute methamphetamine; and Count 5, possession with intent to distribute cocaine. (DCD 2).[1] The indictment included a drug forfeiture allegation and a firearm forfeiture allegation. (*Id*.).

Defendant waived arraignment and the matter was set for trial on March 25, 2019. (DCD 5, 7). The matter was later continued to July 29, 2019, but the motions deadlines were not reset. (DCD 12).

---

[1] "DCD" refers to the district court docket in case number CR-19-1004-CJW, and each reference is followed by the docket entry number. "PSR" refers to the presentence report (at DCD 116) and, unless otherwise noted, each reference is to a paragraph number in the report. Each of the following references is followed by the applicable page number:
- "Def. Brief" refers to defendant's opening brief;
- "Motions TR" refers to the hearing on multiple motions held on August 28, 2019, found at DCD 89;
- "Sent. TR" refers to the December 21, 2020 sentencing hearing transcript, found at DCD 181 and
- "Withdraw TR" refers to the June 12, 2020 transcript on the hearing on defendant's motion to withdraw, found at DCD 143.

3

Defendant later requested a detention hearing, but the court ordered him detained pending trial on April 12, 2019. (DCD 16).

On May 16, 2019, defendant filed a motion to quash search warrants and suppress evidence regarding search warrants. (DCD 18, 18-1). Defendant then filed a motion to suppress the search of a hotel room supplementing his previous motion to suppress. (DCD 20, 20-1). The government resisted defendant's motions. (DCD 25).

Defendant filed a motion to dismiss on June 4, 2019, alleging that law enforcement violated his due process rights by failing to preserve surveillance video of his residence. (DCD 34). On June 5, 2019, United States Magistrate Judge Mark A. Roberts held an evidentiary hearing on the motion to quash search warrants and motion to suppress. (DCD 38). At the end of the allotted time for the hearing, it was agreed that the hearing would be reset for another date and at that time the motion to dismiss would also be addressed at the later date. (DCD 38).

On June 11, 2019, the government filed a motion to strike defendant's two motions to suppress and motion to dismiss as being untimely. (DCD 39). The government also filed a resistance to defendant's motion to dismiss on June 11, 2019. (DCD 40).

4

On June 12, 2019, defendant filed a resistance to the motion to strike. (DCD 41). The magistrate court treated the resistance to be a motion to file out of time and invited a response by the government. (DCD 42). The government responded on June 17, 2020, and the court denied the government's motion. (DCD 44, 45).

On July 9, 2019, the government filed a superseding indictment, updating some of the language in the counts and increasing the drug quantity alleged in Count 4. (DCD 51, 52).

On August 23, 2019, defendant filed a supplemental motion to suppress. (DCD 62). On August 28, 2019, the magistrate judge held a hearing to address the pending motions to suppress and dismiss. (DCD 67).

On October 8, 2019, magistrate judge issued a report and recommendation that all of defendant's motions be denied. (DCD 86). Defendant filed objections to the report and recommendation. (DCD 91). United States District Court Judge C.J. Williams accepted the report and recommendation with minor factual modifications on October 21, 2019. (DCD 98).

Appellate Case: 20-3720      Page: 13      Date Filed: 06/15/2021 Entry ID: 5045668

On October 22, 2019, defendant pled guilty to Count 1 and Count 3. (DCD 102). The parties did not enter into a conditional plea agreement. (DCD 105).[2] Defendant entered his guilty pleas less than a week before the trial was set to begin on October 28, 2019. (DCD 79).

A final presentence report was filed on February 24, 2020. (DCD 126).

On April 14, 2020, defendant's counsel of record filed a motion to withdraw, which was granted, and new counsel was appointed the next day. (DCD 122, 123, 124).

On May 26, 2020, defendant filed a motion to withdraw his guilty plea. (DCD 131). The government responded on June 2, 2020. (DCD 133). Defendant filed a reply brief on June 10, 2020. (DCD 137). A hearing was held on the motion on June 12, 2020, before the magistrate court. (DCD 139).

At the hearing, defendant called no witnesses and relied on exhibits consisting of police reports. (Withdraw TR 3). At the

---

[2] Defendant does not directly attempt to appeal the rulings on the motions to suppress or dismiss in this appeal, but does appeal the court's ruling on his motion to withdraw his plea with the purpose of seeking to reopen the motion to dismiss.

6

conclusion of defendant's evidence, the government asked that the court order that defendant failed in his burden to show materiality. (*Id*.). The court declined to do so, indicating that it would reserve its ruling until the completion of the government's evidence. (Withdraw TR 5). The government called three witnesses. (*Id*.).

On July 6, 2020, the government filed a supplemental brief and filed an additional exhibit. (DCD 145; 145-1). On July 7, 2020, defendant filed a supplemental brief. (DCD 147). Defendant also filed his own copy of the same exhibit the government filed on July 6, 2020. (DCD 148).

On July 27, 2020, the magistrate judge issued a report and recommendation that defendant's motion be denied. (DCD 150). Defendant filed a timely objection on August 10, 2020. (DCD 151).

The district court issued an order denying defendant's motion. (DCD 152).

The final presentence report indicated there were six contested issues for the court to decide: (1) the base offense level pursuant to USSG §2D1.1(c); (2) the additional one level of reduction based on acceptance of responsibility; (3) the scoring of a Kansas conviction based

7

on the beginning of the offense conduct; (4) the scoring of a Missouri conviction, based on the beginning of the offense conduct; (5) the assessment of two criminal history points for being under a criminal justice sentence; and (6) an anticipated motion for a downward variance.  (PSR page 40).

The presentence report recommended a base offense level of 38 based a total converted drug weight of 374,038 kilograms.  (PSR ¶ 30).

On December 14, 2020, both parties filed sentencing memorandums and briefs.  (DCD 162, 163).  In his sentencing brief, defendant withdrew his objection to the criminal history points based on being under a criminal justice sentence.  (DCD 162-1).

Defendant filed a motion for a variance.  (DCD 165).  On December 17, 2020, the government filed a resistance to defendant's motion for a variance.  (DCD 168, 169).  Defendant filed a supplement to his motion for a variance on December 18, 2020.  (DCD 170).

On December 21, 2020, the district court held a sentencing hearing.  (DCD 271).  The government called K.S., K.H., D.F., and R.H. to testify regarding the contested issues.  (*Id*.).

8

Regarding drug quantity, the court found that the proper base offense level was 34, noting that, based on its calculations, "that comes out to 14,405.03 of converted drug weight. Turning, then, to the guideline table 2D1.1(c), that is consistent with really right in the middle of a level 34." (Sent. TR 110).

Regarding acceptance of responsibility, the court stated:

> Going to the issue of acceptance of responsibility, I find the defendant has not clearly demonstrated acceptance of responsibility primarily because of what I find to be frivolous objections to drug quantity in this case. I understand and I appreciate the nuances of the argument Mr. Bishop made with regard to the motion to withdraw his guilty plea. It was a legal attack. The defendant had filed a motion to dismiss the indictment alleging a due process violation. Not that he was innocent, but it was a due process violation was the argument and it had a lot to do with this video and surveillance and so it was not an assertion of innocence. It gets more complicated, though, by when the defendant did have a hearing on the motion to withdraw he was asserting innocence at that point. Although, again, Mr. Bishop is right; the remedy he was seeking was to go back and relitigate the issue on the motion to dismiss. If it was only that issue standing alone, I would find the defendant has accepted responsibility under 3E1.1(a), but combined with what I consider to be frivolous objections to the drug quantity in the guidelines, together I find the defendant has not clearly demonstrated an acceptance of responsibility. With regard to the third level off for acceptance of responsibility, I find the government has not improperly refused to file that third level off for acceptance. The defendant pled late. He forced the government to prepare for trial. The defendant missed the Court-imposed deadline

9

for entering a guilty plea to receive the third level off for acceptance of responsibility and he did have options. This is not a case where a defendant either had to withdraw his motions and give up his legal challenges to get the third level off of acceptance of responsibility. He could easily have entered a conditional plea. A conditional guilty plea allows him to continue to contest the – maintain the legal challenges he's made and yet plead guilty in a timely manner that shows acceptance of responsibility that would entitle him to a third level off for acceptance of responsibility. The defendant chose not to enter a conditional plea, which was his right, but it also indicates that the government then had to prepare for trial and rightfully in my mind is not making the third level off motion.

(Sent. TR 111- 113).

The court found that defendant's criminal history score was properly calculated with the previous offenses occurring within ten years of the offense conduct in this case. (Sent. TR 114).

The court found the total offense level was 34, with a criminal history category of V, defendant's advisory guideline range of imprisonment was 324 to 405 months. (Sent. TR 115).

Defendant called his father in support of his variance request and the court took up matters under seal relating to acceptance of responsibility. (DCD 271; Sent. TR 116-124).

10

The court heard argument from both parties regarding the ultimate sentence. (Sent. TR 132-139). Defendant was then given the opportunity to allocute. (Sent. TR 140-41).

The court denied defendant's motion for a downward variance and sentenced defendant to 324 months' imprisonment. Sent. TR. 147.

## Rulings Presented for Review

Defendant appeals the district court's denial of his motion to withdraw his guilty pleas. He also appeals the court's finding that he was not entitled to a reduction for acceptance of responsibility and argues that his guidelines sentence was substantively unreasonable.

## Statement of the Facts

### A.    *Defendant's Offense Conduct*

Defendant was a member of a conspiracy to distribute at least 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 50 grams or more of actual (pure) methamphetamine. (PSR ¶ 4). The conspiracy began on or about January 2018 and continued to approximately December 2018. (*Id*.).

On October 16, 2018, officers arrested D.F. with 11 grams of methamphetamine. (PSR ¶ 9). He told officers that he obtained the

11

methamphetamine from defendant and that defendant was obtaining pounds of "ice" methamphetamine from a source in Kansas City, and that he had observed defendant with firearms. (*Id*.) He stated defendant would "shoot it out" if police attempted to arrest defendant. (*Id*.).

D.F. testified at the sentencing hearing that he met defendant in the summer of 2018 and was later arrested in October of 2018 with 11 grams of ice methamphetamine that he had received from defendant. (Sent. TR 54-55). After first claiming to receive methamphetamine from defendant only once, he clarified that he got methamphetamine from defendant four to five times, receiving an ounce or two at a time. (Sent. TR 56-57).

In, November 2018, officers spoke with R.H., who purchased 21.68 grams of methamphetamine from defendant and observed firearms in defendant's possession. R.H. observed defendant with ten ounces of methamphetamine on two different occasions in the summer of 2018. (PSR ¶ 11).

On December 30, 2018, law enforcement arrested defendant at a casino in Dubuque, defendant had $10,000 in his pocket and $792 in his wallet. (PSR ¶ 13). In defendant's plea agreement, defendant admitted

12

that the money represented drug sales or was intended to be used to purchase drugs. (PSR ¶ 13; DCD 150 at 9B). Inside defendant's vehicle, officers located several glass pipes, a large amount of drug packaging material, and a digital scale. (PSR ¶ 14). In the defendant's hotel room, officers recovered 95.14 grams of cocaine and 178.92 grams of pure methamphetamine. (PSR ¶ 15). In a storage unit frequented by the defendant, officers recovered (1) a "TEC 9" handgun with an obliterated serial number and two high capacity 34 round magazines that were partially loaded; and (2) a .380 caliber Hi-Point handgun, along with four loaded magazines and one empty magazine. (PSR ¶ 16). At defendant's residence, officers recovered a locked box in the bottom drawer of a dresser with paperwork belonging to the defendant and a .380 round of ammunition, which was the same caliber and brand of the bullets that were in the .380 handgun that was located in the storage unit. (PSR ¶ 17). Law enforcement also located surveillance equipment with a recording system. (*Id.*).

K.B. testified in January 2019, that she purchased methamphetamine from defendant on two occasions and was provided methamphetamine by the defendant on numerous occasions. (DCD

Appellate Case: 20-3720    Page: 21    Date Filed: 06/15/2021 Entry ID: 5045668

162). She recalled seeing defendant with a bagful of methamphetamine that would have been between one to two pounds. (*Id*.). She indicated she saw him with this quantity from September to right around Christmas and was constantly weighing it out. (*Id*.). She also recalled seeing him with a baseball-sized ball of cash. (*Id*). K.B. purchased seven grams of methamphetamine from defendant. (PSR ¶ 18).

On January 24, 2019, K.S. testified that she met defendant in approximately January 2018 and that from about January 2018 to mid-February 2018, K.S. occasionally, but not often, received methamphetamine from defendant. (PSR ¶ 20, DCD 162-3). During that same time, K.S. was dating defendant and testified that, in about January 2018, she went with the defendant to Kansas City. (*Id*.). She recalled that defendant obtained four ounces of methamphetamine while in Kansas City. (*Id*.). K.S. testified that defendant was both verbally and physically abusive towards her. (*Id*.) She testified that defendant was paranoid and that he took her in the middle of nowhere in Wisconsin and, while he was going through her phone, told her that people were going to come hurt her. (*Id*.).

14

At the sentencing hearing, K.S. testified that she met defendant in December 2017 or January 2018. (Sent. TR 17). She was aware that he was a drug dealer prior to her own incarceration in February 2018. (Sent. TR 17). During January of 2018, she went with defendant to Kansas City. (Sent. TR 18). She later learned that, during that trip, defendant obtained methamphetamine. (Sent. TR 19-20). During another trip, defendant took K.S. to Wisconsin and told her that the "people above him" would take care of her. (Sent. TR 26).

In January 2019, K.H. testified that she received ice methamphetamine from defendant off and on between July 2018 and about December 2018, approximately an ounce of ice methamphetamine per week (2 occasions x 28.35 grams = 56.7 grams). (PSR ¶ 19, DCD 166-1). She admitted to receiving two ounces (56.7 grams) on one occasion and said defendant always had $10,000 in cash on his person. (*Id*.).

During defendant's sentencing hearing, K.H. testified that she met defendant through a mutual friend and was aware he sold dope. (Sent. TR 40). She met him in approximately April 2018 and began getting methamphetamine from him shortly after that. (Sent. TR 40).

15

K.H. began by getting user quantities but moved up to two ounces because she was also trafficking methamphetamine at the time. (Sent. TR 41). She received that quantity on one occasion and received an ounce 15 to 16 times. (Sent. TR 41). She testified about seeing a Kleenex box-sized amount of methamphetamine on one occasion. (Sent. TR 44). She also observed defendant with cocaine. (Sent. TR 45).

R.H. testified at the sentencing hearing that he began receiving methamphetamine from defendant in June of 2018. (Sent. TR 66). R.H. said he received up to half-ounce quantities. (Sent. TR 66). R.H. testified that on two occasions he saw defendant with ten ounces to a pound of methamphetamine. (Sent. TR 67). R.H. also testified that defendant carried firearms and said that defendant was not going to go back to jail. (Sent. TR 68).

## B. *Testimony Regarding Recordings at Hearings Prior to Plea Hearing*

Dubuque County Sheriff's Deputy Dan Kearney, who was assigned as an investigator testified regarding the use of a surveillance camera during the hearing on August 28, 2019. (Motions TR 8, 23). Investigator Kearney explained that on November 30, 2018, investigators began conducting 24-hour video surveillance on 740 Boyer

16

Street using a Milestone surveillance camera. (Motions TR 23). The camera remained in place until mid-January 2019. (*Id*.). During the course of this surveillance, Investigator Kearney captured approximately six or seven screenshots of relevant surveillance footage. (Motions TR 79).

According to Investigator Kearney, although the City of Dubuque has many traffic cameras stationed around Dubuque, it only has two moveable cameras dedicated to police surveillance. (Motions TR 35). Both cameras were already in use when officers wanted to conduct surveillance of 740 Boyer. (Motions TR 35). Because of a shortage of cameras, investigators in this case had to use a State of Iowa camera to conduct surveillance. (*Id*.). Similar cameras used in Dubuque saved footage for 30 days. (Motions TR 24). Investigator Kearney believed the cameras would work in a similar way, but later he learned that this was not the case. (Motions TR 75).

The camera ran twenty-four hours a day and was not simultaneously monitored by a police officer all that time. (Motions TR 25). However, under both systems, officers could, on a Monday for example, access footage from the prior weekend. (Motions TR 74).

17

In mid-December, Investigator Kearney became aware that the state did not save footage for 30 days and that, if he had wanted his footage saved, he should have provided hard drives to the state. (Motions TR 76-77). His understanding, after learning the state system would not preserve the video, was that it was not possible to preserve the footage that had already been taken. (Motions TR 77).

Investigator Kearney also testified about multiple search warrants including a GPS warrant for two vehicles signed on November 30, 2018. (Motion TR 18). This warrant application included information from SA Mulnix. (DCD 27).

Defendant had his own "night owl" surveillance system at his home that recorded video footage, later seized by law enforcement, and provided recordings from multiple angles. (Motions TR 26). Defendant provided written consent to law enforcement to search the surveillance system's outside cameras, but he did not provide a password that would permit law enforcement to view footage that was retained in the system. (*Id.*).

18

## C.   *Evidence from Motion to Withdraw Guilty Plea and Hearing*

On January 27, 2020, defense counsel served a subpoena on the Iowa Department of Public Safety requesting copies of any video, photos, or other media of defendant's residence from November 30, 2018 to January 15, 2019.  (DCD 132-1).  Special Agent (SA) Craig Mackaman searched the servers and located video recordings still saved on the server.  (*Id.*).  SA Mackaman indicated that the presence of the video was "somewhat of an anomaly due to the fact that the video camera retention time for most recordings is set for 45 to 90 days without prior arrangements being made for a longer retention period which generally would be up to 365 days at the longest."  (*Id.*).

SA Mackaman also noted:

> The fact that there were files related to this request still retained on the server was merely a malfunction within the video management software and or hardware components of the server which failed to completely erase video files that were beyond the date of the designated retention period set for that camera.  The fact that these files are not complete 24 hours for a certain day or date range shows that some files were deleted while others were not again demonstrating a software or hardware failure.  The video management software is set to archive video at 2 hour increments thus most of the files which remained were segmented into durations of 2 hours in length.

19

*(Id.* at 2).

SA Mackaman listed all the segments of video that were captured. (*Id.*) Only one video, dated December 15, 2018, was made prior to defendant's arrest on December 29, 2018, while the rest of the videos captured periods of time during which defendant was already in custody. (*Id.*).

In response to SA Mackaman's discovery, Investigator Kearney wrote a report detailing his discovery that video recordings did exist despite his being previously told that none were available. (DCD 132-2). Investigator Kearney explained in his report that he told SA Mackaman that he had checked with SA Holly Witt with the DCI in May of 2019 and she said there was no video. (*Id.*). SA Mackaman said the video was located in the state archive folder. (*Id.*).

During the June 2, 2020, hearing, SA Witt testified regarding her involvement with the recording on the Milestone camera in the case. (Withdraw TR 8-29). This was one of approximately 50 cameras that would have been serviced by the state at this time. (*Id.* at 9). SA Witt noted that this case caused her department to do things differently when there was a potential federal case. (*Id.* at 10; DCD 140). SA Witt

20

explained that there was not sufficient room to hold all videos for every case for 365 days due to server capacity. (Withdraw TR 13). Her involvement was limited. (*Id*. at 10). SA Witt did not recall speaking with Kearney in December 2018. (*Id*. at 23-24). SA Witt recalled contact from Investigator Kearney on May 17, 2019, regarding Seys' case. (*Id*. at 10-11). SA Mackaman and one other special agent had access to areas she could not see. (*Id*. at 12). Witt confirmed that when Kearney checked in May, she could not see any videos on the server and could not see the areas where Mackaman later recovered them. (*Id*. at 15).

SA Mackaman also testified at the hearing. (Withdraw TR 30). He explained that in 2018, the standard retention time was 45 days. (*Id*. at 31). SA Mackaman testified that agencies were told that things were maintained for 30 days but in reality they were typically kept for 45 days to provide a grace period. (*Id*. at 43). SA Mackaman did not recall anything about this case prior to the contact from defendant's attorney and did not remember discussing the case with Witt. (*Id*. at 45). He also did not recall communicating with Kearney in December of 2018. (*Id*. at 45). (Mackaman said that in November or October of 2019

he was contacted by defendant's attorney and told him that it would be unlikely there would still be video from that time period. (*Id*. at 33). The attorney got back to him in January 2020 and sent a subpoena requesting video recordings from November 30, 2018 to January 15, 2019. (*Id*. at 33). SA Mackaman explained that he checked and there was video found in a separate folder that he testified that he considered this to be a malfunction because it should have been deleted consistent with the operation of the system. (*Id*. at 34). He explained the remaining video was located in an archive folder with limited access. (*Id*. at 35).

During the June 2, 2020 hearing, Investigator Kearney testified that this was the first time he was involved in a case using the state server. (Withdraw TR at 48). He further stated that he was given incorrect information by Agent Mulnix regarding the preservation of cameras on the state server. (*Id*. at 48-49). Specifically, he was told that he needed to provide hard drives in advance of the cameras being used. (*Id*. at 63-64, 67-68, 71). Investigator Kearney knew Agent Mulnix to be a long-time state narcotics officer with significantly more

experience than him at the time the camera was installed. (*Id*. at 62, 71).

Investigator Kearney testified that in May of 2019, at the request of the Assistant United States Attorney handling the case, he contacted Witt to see if there were any video recordings from the system. (Withdraw TR 68-69).

Investigator Kearney confirmed that this was not the only video surveillance in this case and that defendant never provided a password to his own system. (Withdraw TR 70).

Following the hearing, and at the request of defendant, the government obtained a copy of the request for the camera which both parties filed as an exhibit. (DCD 145-1; 148). The form was filled out by Agent Mulnix. (*Id*.).[3] The form contained language that said, "Any information gathered during the operation of this equipment will be used for criminal purposes only. All other information gathered that is non-criminal will be Destroyed." (*Id*.). Additionally, the form stated,

---

[3] Defendant did not seek at the end of the hearing on the motion to withdraw to leave the record open or later to include Agent Mulnix's testimony.

"Note: IP video will be maintained for no more than 30 days unless specifically requested." (*Id.*).

Agent Mulnix checked a box on the form indicating that, "Records of surveillance will not be maintained by law enforcement personnel unless there is a clear criminal predicate (except that some records may be maintained for training purposes)." (*Id.*).

Appellate Case: 20-3720    Page: 32    Date Filed: 06/15/2021 Entry ID: 5045668

## SUMMARY OF THE ARGUMENT

The district court did not abuse its discretion in finding that defendant failed to provide a fair and just reason to support the withdrawal of his guilty plea where there was no exculpatory evidence, the investigator did not act in bad faith, and defendant had his own surveillance camera video. The district court did not clearly err in denying defendant a reduction of acceptance of responsibility where he attempted to withdraw his guilty plea, made a bear assertion of his innocence, and frivolously contested facts related to his drug trafficking. Finally, the district court did not abuse its discretion when it sentenced defendant at the bottom of the guidelines range sentence and it did not consider an irrelevant or improper factor when it discussed the 3553(a) factors, including defendant's childhood.

Appellate Case: 20-3720    Page: 33    Date Filed: 06/15/2021 Entry ID: 5045668

# ARGUMENT

## I. The District Court Did Not Abuse Its Discretion in Denying Defendant's Motion to Withdraw His Guilty Plea

### A. Standard of Review

This court reviews a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Norvell*, 729 F.3d 788, 792 (8th Cir. 2013) (citing *United States v. Cruz*, 643 F.3d 639, 641 (8th Cir. 2011)).

### B. The Court Correctly Denied Defendant's Motion to Withdraw His Guilty Plea

Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure provides that a defendant may withdraw his guilty plea before sentence is imposed if "the defendant can show a fair and just reason for requesting he withdrawal." Defendant bears the burden to establish the existence of a fair and just reason. *Cruz*, 643 F.3d at 642.

In *United States v. Newson*, 46 F.3d 730 (8th Cir. 1995), this Court stated, "'Rule 11 proceedings are not an exercise of futility. The plea of guilty is a solemn act not to be disregarded because of belated misgivings about its wisdom.'" *Id.* at 732 (quoting *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992)).

26

In *United States v. McHenry*, 849 F.3d 699 (8th Cir. 2017), this Court stated, "'When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise.'" *Id*. at 705 (quoting *Morrison*, 967 F.2d at 268).

If a defendant meets his burden of showing a fair and just reason to withdraw his guilty plea, a court must consider three additional factors:

> Even if a defendant shows a fair and just reason for withdrawal, "the court must consider other factors before granting the motion, namely, whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion."

*Id*. (quoting *Cruz*, 643 F.3d at 642).

### 1.    *Defendant failed to establish a fair and just reason to withdraw his plea*

In determining whether a defendant has presented a "fair and just reason" to withdraw his guilty plea, courts should consider whether defendant's plea was entered knowingly, voluntarily, and after adequate representation by counsel. *United States v. Thompson*, 906 F.2d 1292, 1299 (8th Cir. 1990). "'The defendant bears the burden of

27

showing fair and just grounds for withdrawal.'" *United States v. Rollins*, 552 F.3d 739, 741 (8th Cir. 2009) (quoting *United States v. Mugan*, 441 F.3d 622, 630-31 (8th Cir. 2006)).

To establish a *Brady* violation, "'the defendant must show the government suppressed evidence that was both favorable to the defense and material to the issue of guilt or punishment.'" *United States v. Williams*, 577 F.3d 878, 882 (8th Cir. 2009) (quoting *United States v. Farmer*, 312 F.3d 933, 936 (8th Cir. 2002)). Such evidence is "material" only if there is a "reasonable probability" that, had it been disclosed, "the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999). An allegation based solely on "conjecture and speculation, cannot support a *Brady* violation." *United States v. Horton*, 756 F.3d 569, 576 (8th Cir. 2014).

In *United States v. Paris*, 954 F.3d 1069 (8th Cir. 2020), this Court stated:

> The general rule is that "[l]aw enforcement's failure to preserve potentially exculpatory evidence violates due process if the defendant can show that [it] acted in bad faith." *United States v. LeBeau*, 867 F.3d 960, 976-77 (8th Cir. 2017) (citing *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L.Ed.2d 281 (1988)). "Additionally, the 'evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a

28

nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *Id.* at 977 (quoting *California v. Trombetta*, 467 U.S. 479, 489, 104 S. Ct. 2528, 81 L.Ed.2d 413 (1984)); *see also* [*United States v.*] *Webster*, 625 F.3d [439,] 446 [(8th Cir. 2010)] (requiring the same two showings when the evidence is "potentially useful").

*Id.* at 1074.

First, as the district court found, the Milestone footage is not material, exculpatory evidence. (DCD 98). Defendant has argued that the video would have "shown the number, nature and identity of visitors to the property during the time the camera was installed" (DCD 34-1; Def. Brief 13, footnote 3). In this case, the lack of video is equally effective to undermine law enforcement testimony as defendant could have inquired about the lack of video and crossed examined law enforcement about their observations. Additionally, defendant has made no showing of the apparent exculpatory nature of the evidence at the time it was destroyed.

Second, "'[u]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.'" *Williams*, 577 F.3d at

Appellate Case: 20-3720     Page: 37     Date Filed: 06/15/2021 Entry ID: 5045668

882 (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).[4]

"[N]egligent destruction of evidence is insufficient to establish a due process claim." *Bugh*, 701 F.3d at 895; *but see Brady*, 373 U.S. at 87 (holding suppression of "clearly exculpatory" evidence – whether done in good faith or bad faith - violates due process).

Defendant "wishes to withdraw his guilty plea so that he can attempt to reopen the record for his motion to dismiss and to present the newly discovered evidence described in this brief and to add the critical testimony of Agent Mulnix." (Def. Brief 34).

Defendant argues that Investigator Kearney perjured himself regarding the destruction of the Milestone Camera recordings. (Def. Brief 32). The district court rejected this argument:

> Indeed, defendant hangs his hat on the hope that this Court accepts defendant's assertions of Investigator Kearney's perjury and dishonesty as irrefutable. To be sure, the new evidence arguably shows that Investigator Kearney was less diligent than previously believed. This still falls far short of the type of behavior which could plausibly be considered to be bad faith. There is no evidence – other than defendant's supposition – that Investigator Kearney intentionally destroyed files, made any "conscious effort[s] to suppress exculpatory evidence," or otherwise engaged in a "calculated

---

[4] The burden is on defendant to demonstrate evidence was destroyed in bad faith. *United States v. Bugh*, 701 F.3d 888, 895 (8th Cir. 2012).

effort to circumvent the disclosure requirements established by *Brady v. Maryland* and its progeny." *California v. Trombetta*, 467 U.S. 479, 488 (1984). Defendant's accusations are mere characterizations and enjoy little support in the record. Defendant relies entirely on inferences drawn from an overly literal parsing of Investigator Kearney's testimony and assumptions about what law enforcement agents from different but related agencies should know throughout the course of a prolonged investigation. These inferences are unreasonable and, without more, do not prove bad faith on the part of the government. As a result, this Court declines to endorse them.

(DCD 152 at 12-13).

Defendant claims that Investigator Kearney must have been referring to another investigator at the August 2019 hearing and that this was inconsistent with this June 2020 testimony that spoke with Agent Mulnix about the video preservation issue. (Def. Brief 22-31). This argument is without merit.

Investigator Kearney referred to the "state" in the August 2019 hearing. The magistrate court asked him, "At some point you learned from the State, 'Hey, we're not saving all of the footage'; correct?" (Motions TR at 77). Investigator Kearney responded, "Yes." (Id.). Defendant argues that, because Agent Mulnix could not have been the person who saved the footage, the answer "Yes" showed that Agent Mulnix could not have been the source for Investigator Kearney's

31

mistaken information about the video preservation issue. (Def. Brief 24-27). The district court correctly characterized defendant's argument as "an overly literal parsing of Investigator Kearney's testimony . . . ." (DCD 152 at 14).

Here the evidence shows Agent Mulnix's involvement in the investigation including being an information source from the GPS warrant and being the applicant for the camera on December 3, 2018. Additionally, neither SA Witt nor SA Mackaman recall speaking to Kearney about the cameras in December of 2018. Without any record that Investigator Kearney had direct contact with SA Witt or SA Mackaman about the video footage in 2018, it is logical that his information came from the state investigator he was working with in this case. Agent Mulnix is a state investigator and was known to have a lot of experience.

Defendant appears to argue that the video footage obtained exculpatory evidence and that Investigator Kearney allowed it to be destroyed in bad faith. (Def. Brief 13).

Defendant's desire to further cross-exam Investigator Kearney does not support defendant's motion to withdraw his plea. In *United*

32

*States v. Nichols*, 986 F.2d 1199 (8th Cir. 1993), this Court found newly discovered evidence was a source of impeachment evidence to be used against an officer, but that did not provide a fair and just reason to allow the defendant to withdraw his guilty pleas. *Id.* at 1203.

Third, defendant has not established that the video evidence was "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Defendant had his own surveillance system that could have been accessed if defendant provided the password.

If the defendant fails to present a fair and just reason for withdrawing his plea, the district court's inquiry is at an end, and the defendant's motion should be denied. *United States v. Wojcik*, 60 F.3d 431 (8th Cir. 1995); *United States v. Abdullah*, 947 F.2d 306, 311 (8th Cir. 1991). Here, defendant has failed to show a fair and just reason for the withdrawal of his guilty plea, and this court may affirm without consideration of the other factors.

## 2. *Defendant has failed to support his claim of legal innocence*

A "'mere assertion of innocence' [does] not provide a sufficient evidentiary basis for withdrawing" a guilty plea. *United States*

33

*v. Goodson*, 569 F.3d 379, 383 (8th Cir. 2009); *see also United States v. Ludwig*, 972 F.2d 948, 951 (8th Cir. 1992) ("mere assertion of innocence, absent a substantial supporting record[,] will not be sufficient to overturn a denial of a motion to withdraw.")(citations omitted); *Morrison*, 967 F.2d at 268 (an assertion of innocence, even if swiftly done after a plea, is not a fair and just reason to grant a motion to withdraw a guilty plea). Defendant's empty claim of innocence carries little weight in light of his contrary testimony, under oath, at the change of plea hearing. *See United States v. Peebles*, 80 F.3d 278, 279 (8th Cir. 1996) (per curiam) (defendant's claims of innocence found unavailing given admissions at change of plea hearing).

Defendant's entire discussion on innocence in his brief is:

> "Even if such a fair and just reason exists, before granting the motion a court must consider 'whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion.'" *United States v. Ramirez-Hernandez*, 449 F.3d 824, 826 (8th Cir. 2006) (quoting *United States v. Nichols*, 986 F.2d 1199, 1201 (8th Cir. 1993)). Regarding Mr. Seys' assertion of innocence, the District Court acknowledged that the "new evidence [the evidence from Agents Witt and Mackaman] provides a stronger foundation from which to argue the merits of the prior Motion to Dismiss or certain aspects of the government's case." Doc. 152, p. 17. Even beyond the motion to dismiss, Mr. Seys has

34

asserted his innocence. (Transcript - Hrg. Withdraw Guilty Plea; pp. 74-75) (Doc No. 147, pp. 18-26).

(Def. Brief 32-33).

Defendant does little more than assert his innocence here. He does not show how he is not guilty despite signing a plea agreement and entering a guilty plea under oath in this case. This factor weighs in the favor of denial on the motion to withdraw defendant's guilty plea.

### 3. *The timing of defendant's motion weighs against allowing defendant to withdraw his plea*

The delay in filing shows that defendant's motion to withdraw his plea appears to be based on "belated misgivings about its wisdom." *United States v. Green*, 521 F.3d 929, 931 (8th Cir. 2008) (citation omitted). Here, defendant waited to file his motion to withdraw for over three months after receiving the information on the additional video recordings. In *United States v. Boone*, 869 F.2d 1089 (8th Cir. 1989), a two-month delay in filing a motion to withdraw his guilty plea weighed in favor of denial of the defendant's motion. *Id.* at 1092.

Defendant's motion to withdraw the guilty plea was filed approximately six months after entry of the guilty plea, over three months after the discovery of the video recordings, three months after

35

the final presentence report was issued, and more than three weeks after the original sentencing date of May 1, 2020. Based upon the timing of defendant's motion, the court should deny the motion to withdraw the guilty plea.

### 4. The government would have been prejudiced by the withdrawal of defendant's plea

"[A]llowing [a defendant] to withdraw his plea and forcing the government to prepare its case once again would prejudice the government." *United States v. Durham*, 178 F.3d 796, 799 (6th Cir. 1999).

While the district court found this factor weighed in favor of defendant, the government would be prejudiced in that it would need to locate and re-subpoena witnesses and repeat trial preparations that had already been completed. Even if this Court weighs this factor in favor of defendant, it does not tip the balance in favor of allowing defendant to withdraw his guilty plea.

The district court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea because he failed to provide a fair and just reason to allow him to withdraw his pleas and the other three factors support the district court's decision.

36

## II. The District Court Did Not Clearly Err in Sentencing Defendant When It Denied Him a Reduction for Acceptance of Responsibility

### A. Standard of Review

"A district court's factual determination about whether the defendant accepted responsibility is entitled to great deference, and we will reverse it only if it is so clearly erroneous as to be without foundation." *United States v. Walker*, 688 F.3d 416, 426 (8th Cir. 2012) (citations and quotation omitted).

### B. The District Court Properly Denied Defendant a Reduction for Acceptance of Responsibility

A defendant is only entitled to a reduction of his offense level where he clearly demonstrates acceptance of responsibility for his offense. USSG §3E1.1. The burden is on the defendant to establish that he has accepted responsibility. *United States v. Morales*, 923 F.2d 621, 628 (8th Cir. 1991). As noted in Application Note 3 to USSG §3E1.1, "A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." USSG §3E1.1 (comment n.3). Acceptance is an all-or-nothing proposition. *United States v. Rice*, 184 F.3d 740, 741 (8th Cir. 1999).

37

Because defendant filed a motion to withdraw his plea (DCD 131), defendant is no longer entitled to a reduction in his offense level for acceptance. *See Newson*, 46 F.3d at 733-34 (affirming the denial of acceptance where defendant attempted to withdraw his plea and, in doing so, denied the intent element of the crime charged). Specifically, at the hearing, defendant, through counsel, asserted his innocence. (DCD 152 at 17). Defendant's bare claim of innocence is inconsistent with acceptance of responsibility.

Additionally, defendant continued to contest relevant facts, including requiring an evidentiary hearing. "Where a defendant denies relevant conduct that is obviously true, the denial of acceptance of responsibility is appropriate." *United States v. Mahone*, 688 F.3d 907, 911 (8th Cir. 2012).

Defendant claims in his brief that he was denied acceptance because he objected to the drug weight determination. (Def. Brief at 35). This oversimplification of the record misstates the district court's finding regarding the denial of acceptance in this case. (Sent. TR 106-113). Where defendant merely challenged drug quantity, as he did

38

with R.H., the district court did not find that objection cut against acceptance.  (Sent. TR 107).

The court stated:

> I agree the defendant has every right to contest drug quantity and make the government prove up drug quantity. Making the government do that does not necessarily bear on acceptance of responsibility, but it does go to the nature of the objection.  If it is, yes, I dealt with this person and I distributed quantities of methamphetamine to the person, but just not that much, that's one way of attacking the drug quantity without calling into question your acceptance for responsibility.

(Sent. TR 106).

First, the court found that defendant frivolously contested the facts where he claimed he never dealt drugs to D.F.  (Sent. TR 106) ("I found [D.F.]'s credibility at least to the extent that he was getting dope from the defendant and was buying methamphetamine from the defendant credible and an objection flatly denying any type of drug relationship is a frivolous objection.").

Second, the court found defendant's claims that he never provided K.H. with more than user quantities to be frivolous.  (Sent. TR 109-110).

Appellate Case: 20-3720     Page: 47     Date Filed: 06/15/2021 Entry ID: 5045668

Defendant failed to show that he had fully accepted responsibility based on his frivolous objections and by filing his motion to withdraw his guilty plea. The district court did not clearly err when it denied defendant a §3E1.1 downward adjustment for acceptance of responsibility.

## III. The District Court Did Not Abuse Its Discretion in Imposing a Substantively Reasonable Sentence at the Bottom of the Guidelines Range

### A. Standard of Review

"This court 'review[s] the imposition of sentences, whether inside or outside the Guidelines range, [under] a deferential abuse-of-discretion standard.'" *United States v. Thigpen*, 848 F.3d 841, 847 (8th Cir. 2017) (quoting *United States v. Jones*, 612 F.3d 1040, 1044 (8th Cir. 2010), in turn quoting *United States v. Hayes*, 518 F.3d 989, 995 (8th Cir. 2008)).

> An abuse of discretion occurs when: (1) a court fails to consider a relevant factor that should have received significant weight; (2) a court gives significant weight to an improper or irrelevant factor; or (3) a court considers only the appropriate factors but in weighing them commits a clear error of judgment.

*United States v. Funke*, 846 F.3d 998, 1000 (8th Cir. 2017) (quoting

*United States v. Farmer*, 647 F.3d 1175, 1179 (8th Cir. 2011) (quotation

omitted)).

"Where 'a sentence imposed is within the advisory guideline

range, [this court] typically accord[s] it a presumption of

reasonableness.'" *Id.* (quoting *United States v. Scales*, 735 F.3d 1048,

1052 (8th Cir. 2013), in turn quoting *United States v. Deegan*, 605 F.3d

625, 634 (8th Cir. 2010)). "'It is the defendant's burden to rebut the

presumption and to show that the sentence should have been

lower.'" *Id.* (quoting *United States v. Goodale*, 738 F.3d 917, 926 (8th

Cir. 2013), in turn citing *United States v. Peck*, 496 F.3d 885, 891 (8th

Cir. 2007)).

"[I]t will be the unusual case when we reverse a district court

sentence—whether within, above, or below the applicable Guidelines

range—as substantively unreasonable." *United States v. Feemster*, 572

F.3d 455, 461 (8th Cir. 2009) (en banc) (citation and quotation omitted).

Appellate Case: 20-3720    Page: 49    Date Filed: 06/15/2021 Entry ID: 5045668

**B.     *The District Court Did Not Err in Imposing a Substantively Reasonable Sentence***

Title 18, United States Code, Section 3553(a) "requires that the district court impose a sentence no greater than necessary to account for the nature and circumstances of the offense and the defendant's history and characteristics, as well as to provide just punishment, to protect the public, and to avoid unwarranted sentencing disparities." *United States v. Townsend*, 617 F.3d 991, 994 (8th Cir. 2010).

"The district court may give some factors less weight than a defendant prefers or more to other factors but that alone does not justify reversal." *United States v. Anderson*, 618 F.3d 873, 883 (8th Cir. 2010); *see also United States v. Wilcox*, 666 F.3d 1154, 1157-58 (8th Cir. 2012) (noting "[t]he district court's choice to assign relatively greater weight to the nature and circumstances of the offense than to the mitigating personal characteristics of the defendant is well within the 'wide latitude [given] to individual district court judges in weighing relevant factors.'" (quoting *United States v. Wisecarver*, 644 F.3d 764, 774 (8th Cir. 2011))).

Defendant's argument focuses on his claim that, "Clearly the District Court, in discounting Mr. Sey' request for a variance, gave

42

significant weight to the supposition that Mr. Seys' two siblings, 'who grew up apparently in the same setting,' had not turned to drugs or crime." (Def. Brief 38). Defendant argues that the court "gave significant weight to an improper or irrelevant factor." (*Id*.). Defendant supports his claim by quoting a single paragraph of the court's oral discussion of the sentencing factors. (Def. Brief 37-38). The court's discussion of a potential variance fills almost seven full pages of the transcript and the court addressed multiple factors, including all the factors at 18 U.S.C. § 3553(a). (Sent. TR 141- 47).

The court discussed defendant's offense conduct, his age, mental health, his frequent run-ins with law enforcement, his a lack of legitimate income, his drug and alcohol use, childhood, his 15 previous criminal convictions, including assaults on law enforcement, and the lack of policy disagreement by the court relating to the methamphetamine guidelines. Ultimately, the court found both aggravating and mitigating factors that, when balanced, supported a sentence at the bottom of the guidelines range. (*Id*.). The court's discussion of defendant's siblings was in response to defendant's argument that his childhood supported a variance. (Sent. TR 143-44)

43

"Where the district court in imposing a sentence makes 'an individualized assessment based on the facts presented,' addressing the defendant's proffered information in its consideration of the §3553(a) factors, such sentence is not unreasonable." *United States v. Stults*, 575 F.3d 834, 849 (8th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). That is precisely what the district court did here. This is not "the unusual case when [this Court] reverse[s] a district court sentence . . . as substantively unreasonable." *Feemster*, 572 F.3d at 464.

The district court did not abuse its discretion when it sentenced defendant at the bottom of the guidelines range.

## CONCLUSION

For the above reasons, defendant's conviction and sentence should be affirmed.

Respectfully submitted,

SEAN R. BERRY
Acting United States Attorney

By: */s/ Emily K. Nydle*

EMILY K. NYDLE
Assistant United States Attorney
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa 52401
(319) 363-6333/(319) 363-1990 (fax)
Emily.Nydle@usdoj.gov

44

## CERTIFICATE OF FILING AND SERVICE

I certify that, on June 15, 2021, I electronically filed the foregoing brief with the Clerk for the Eighth Circuit Court of Appeals by using the CM/ECF system. The electronic brief and the addendum attached to the brief, if any, have been scanned for viruses using McAfee and the scan showed no virus.

I further certify that, on _____, 2021, I submitted ten paper copies of the brief to the Clerk of Court and one paper copy to each party separately represented or proceeding pro se.

SEAN R. BERRY
Acting United States Attorney

By: */s/ Linda Mersch*

_____
Legal Assistant

Copies to:

John Bishop
The Armstrong Centre, Suite 299
222 Third Avenue SE
Cedar Rapids, IA 52401

Appellate Case: 20-3720    Page: 53    Date Filed: 06/15/2021 Entry ID: 5045668

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I certify that the foregoing brief complies with the type-volume limit of Fed R. App. P. 32(a)(7)(B). The brief uses a proportional-spaced typeface, fourteen-point Century Schoolbook font. Based on a count under Microsoft Word Version 2016 for Windows, the brief contains 8,420 words, excluding the parts of the brief exempted by Fed R. App. P. 32(f).

SEAN R. BERRY
Acting United States Attorney

By: */s/ Emily K. Nydle*

_____

EMILY K. NYDLE
Assistant United States Attorney